Argued and submitted May 30, reversed and remanded August 29, 1990,
reconsideration allowed by opinion February 13, 1991
See 105 Or App 570 (1991)

STATE OF OREGON,
*Appellant,*

*v.*

ROBERT KEITH SHELTON,
*Respondent.*

(87-2550-C-2; CA A61575)

796 P2d 390

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Peter Gartlan, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant was indicted for possession of a controlled substance. ORS 475.992(4). The state appeals, for the second time, from an order granting defendant's motion to suppress evidence obtained as the result of a street stop. On the first appeal, we reversed and remanded for findings of fact and conclusions of law. *State v. Shelton,* 95 Or App 127, 767 P2d 496 (1989). We now reverse and remand for further proceedings.

Medford Police Officer Churma had had several contacts with defendant in which defendant appeared to be under the influence of cocaine. On the night of August 27, 1987, while on routine patrol, Churma was attempting to locate Cardinez, a suspect in a hit-and-run accident. Driving toward the Village Inn, where he believed that Cardinez was staying, he saw defendant walking up the street. Defendant's back was toward Churma. Mistaking him for Cardinez, Churma crossed three lanes of traffic in an effort to get closer. Although he then realized that the person was defendant, he decided to ask him if he had seen Cardinez, because he knew that the two were acquainted.

Churma pulled alongside defendant without activating his overhead lights or siren. He testified that

"when I said, 'Hi, Bob,' he said hi to me. And I noticed his speech was funny and I could see objects sticking out of his mouth, and at that time I said, 'What do you have in your mouth there,' and I realized that I was looking at paperfolds that I've seen in the past. And he said 'gum,' and I said, 'Bob, those are paperfolds of cocaine.' "

At that point, defendant tried to chew and swallow the paperfolds, which made him choke. Churma got out of the patrol car and ordered or convinced defendant to spit out what later proved to be three paperfolds of cocaine. He then arrested him for possession of a controlled substance.

At the hearing, the trial court granted defendant's motion to suppress the paperfolds, stating only:

"It's close. It's a call in an extremely close situation, but I think it's the Court's responsibility to resolve close calls in favor of the defendants, so I will suppress the evidence."

The state appealed, contending that the seizure could be justified by either the "plain view" or "emergency" exceptions to the warrant requirement. We remanded for findings of fact and conclusions of law, explaining that the order was not sufficient for effective review, because we could not discern its factual or legal basis. The trial court then issued a second order granting defendant's motion, accompanied by this reasoning:

> "The District Attorney argued in support of the plain view theory that the officer could see what appeared to him to be a paperfold in the mouth of the defendant [and] that this gave him the right to order the defendant to spit the contents of his mouth into the officer's hands. The officer never testified that he could observe any powder substance or anything else that resembled drugs, simply that he was familiar with the packaging of narcotics and that they were often put in paperfolds. Since the defendant was known to him as a narcotics user, he felt that the paperfold in the defendant's mouth did, in fact, contain narcotics. It is this court's opinion and therefore [it] finds that what the officer saw in the defendant's mouth was insufficient to determine that the defendant, in fact, had narcotics in his mouth.
>
> "* * * * *
>
> "Further, the court determines that the defendant's stopping and talking to the officer was in response to a police authority and was not voluntary as was removing the contents of his mouth."

In this appeal, the state contends that the trial court erred in granting defendant's motion to suppress, because Churma's initial contact with defendant was not a stop, but merely a street encounter. It argues that, having discovered paperfolds in plain view during that encounter, Churma had probable cause to arrest defendant for unlawful possession of a controlled substance.

We agree. In approaching defendant, Churma did not turn on his overhead lights or siren or make any other show of authority. Indeed, there is no indication that defendant was even aware of Churma's approach until the officer greeted him, immediately after which Churma noticed the paperfolds. "Mere inquiry by a police officer without restraint of liberty is not a 'stop' and requires no justification." *State v. Eisenbarth,* 93 Or App 384, 387, 762 P2d 343 (1988). (Citations omitted.)

Thus, Churma could lawfully seize the paperfolds, if seeing them gave him probable cause to believe that a crime was being committed.

It did. One need not open a can labeled "beans" to be reasonably certain that there are beans inside, the trial court's reasoning notwithstanding. Similarly, an officer with sufficient training and experience can form a reasonable belief that a paperfold, especially one that a person is trying to swallow, contains a controlled substance. *State v. McCrory,* 84 Or App 390, 394, 734 P2d 359 (1987). Churma testified that, because of his experience and training, he knew that paperfolds typically contain cocaine, and he could see the edges of them protruding from defendant's mouth. He also knew that defendant had used cocaine in the past. The trial court erred when it suppressed the evidence.[1]

Reversed and remanded.

---

[1] Given our disposition of the case, it is unnecessary to address the state's contention that exigent circumstances also justified the seizure.