Argued and submitted September 25, 1990, reversed and remanded for new trial February 13, 1991

# STATE OF OREGON,
*Respondent,*

*v.*

# BRUCE THOMAS JOHNSON,
*Appellant.*

## (C89-01-30301; CA A61731)

805 P2d 747

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Anne F. Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Marianne Ghim, Certified Law Student, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

## EDMONDS, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns as error the denial of his motion to suppress the methamphetamine and drug paraphernalia seized from his person. We reverse.

Late at night, three uniformed police officers arrived at an apartment building parking lot. They were investigating a report of a fight in the parking lot. They saw defendant leave an apartment with a flashlight in his hand, walk to the edge of the parking lot, turn around and walk back toward the apartment. Officer Tercek asked if defendant would talk with him. Defendant stopped and said, "Sure." Defendant was standing on a path behind a bush approximately chest high and had his hand in his pocket. Tercek told defendant that they were investigating a report of a fight. Tercek asked if defendant knew anything about the fight, and defendant said, "No." Tercek did not believe defendant; he testified that he suspected that defendant was either involved in the fight or had seen it. He told defendant that he could not see him very well and asked what he had in his pocket. Defendant said, "Nothing," withdrew his hand from the pocket and raised both hands to a horizontal position. Tercek said, "I can't see you back there, can you step out [from behind the bush]?" Defendant changed his course and walked about 15 feet toward Tercek.

When defendant was in front of him, Tercek asked about the fight again, and defendant continued to deny any knowledge of it. Tercek then said, "Can I check your pockets?," to which defendant replied, "Sure." Tercek patted the outside of defendant's leather jacket and felt a cylindrical object in the left breast area. He reached into the outer breast pocket but was unable to retrieve the object. He asked defendant what the object was, but he did not respond. Tercek then tapped the defendant's left breast area and said, "Where is this?" Defendant said, "Right here," and used his right hand to point down inside the jacket. Tercek pulled aside the lapel, reached inside the jacket and removed a container of methamphetamine and a syringe.

■ ■ Defendant argues that he was stopped without reasonable suspicion and that his consent to search was involuntary. The state asserts that what occurred was "only a

conversation" and that defendant voluntarily consented to the search of his jacket. A stop is "a temporary restraint of a person's liberty by a peace officer lawfully present in any place." ORS 131.605(5). "A person is 'restrained' when, in view of all the circumstances, a reasonable person would have believed he was not free to leave." *State v. Horton,* 86 Or App 199, 202, 738 P2d 609 (1987). In judging what a reasonable person would believe, we look for physical force or a show of authority by the officer. The test is an objective one to be determined by the totality of the evidence. *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981).

■  What starts out as a police-citizen conversation may be converted into a stop by a show of authority. *State v. Warner,* 284 Or 147, 162, 585 P2d 681 (1978). In *State v. Painter,* 296 Or 422, 676 P2d 309 (1984), the court held that the retention of identification converted an encounter into a stop. In *State v. Evans,* 16 Or App 189, 517 P2d 1225, *rev den* (1974), we held that the police crossed the line from a conversation to a stop when, after the initial inquiry did not furnish reasonable suspicion that the defendant was wanted or that his presence or activities were suspicious, they continued to question him about what he had in his pocket. We said,

> "[I]t is unlikely that a pair of young men alone at night on a dark street summoned to a police car, illuminated by lights from that car, required to produce identification and answer questions, and positioned between two uniformed, armed policemen would feel free to walk away. One's will is constrained by what is called in an unrelated constitutional setting 'a police-dominated atmosphere.' * * * [T]he constraint to volition is equally real whether it arises by implication from the color of authority of the police or from their express command." 16 Or App at 196.

■■  Tercek had already asked defendant about the report of the fight when he inquired about what defendant had in his pocket and requested that he come from out behind the bush to where Tercek stood. Under the circumstances, a reasonable person in defendant's position would conclude that he was being summoned by the officers and was not free to continue walking back to the apartment. The 15 feet that defendant walked toward the officers in response to Tercek's request, which was away from the direction that he was walking, manifested the domination that Tercek exercised. That show of

authority converted the conversation into a stop. Because the state concedes that the police did not have reasonable suspicion to believe that defendant had committed a crime, the stop was unlawful.

The state argues that this case is analogous to *State v. Tetro,* 98 Or App 492, 779 P2d 1080 (1989), where an officer approached the defendant and his passenger, who were seated in a car. While conversing with the passenger, the officer asked him what he had just put in his pocket. The passenger replied, "Nothing," and said, "Go ahead and search." The officer asked the passenger to get out of the car, after which he found marijuana in the passenger's pocket. We said that the conversation was not a stop, because the passenger's actions resulted from his express consent to search, rather than from any show of authority by the officer. 98 Or App at 495. Here, in contrast, after Tercek had exhausted any objective basis for stopping defendant, he required defendant to approach *before* the request to search was made.

We must next determine whether the methamphetamine and paraphernalia seized after defendant consented to the search of his pockets are admissible evidence. That requires examination of the totality of facts and circumstances to ascertain whether the consent was a result of coercion or was voluntary. If the consent was coerced, the evidence must be suppressed. Even if defendant voluntarily consented to the search, the evidence is inadmissible, if "it is found that the consent was gained by exploitation of [a prior] illegality or that defendant's free will was tainted by the illegal police conduct." *State v. Kennedy, supra,* 290 Or at 501-02.

The methamphetamine and paraphernalia are inadmissible because, regardless of whether defendant's consent was voluntary, the consent was gained by exploitation of the illegal stop. Tercek stopped defendant to find out if he knew anything about a fight. Then, after defendant was required to alter his course, but without any intervening circumstance, Tercek obtained consent to search defendant's pockets. It follows that the consent was obtained by exploiting the prior illegal police conduct. The motion to suppress should have been granted.

Reversed and remanded for a new trial.

**RIGGS, J.,** dissenting.

As is often the situation in search and seizure cases, the divergent viewpoints of the majority and dissenting opinions in this case are fact dependent. I view the facts and the reasonable inferences that flow from them differently than the majority. Unlike the majority, I do not believe that Tercek "converted" a "police-citizen" conversation into a stop by a "show of authority." The only show of authority was the reasonable request that defendant step out from behind a bush where he was partially concealed and move the few feet to where Tercek stood. Because of the lack of lighting, the hedges and a nighttime environment, Tercek told defendant that he could not see very well and asked him to move out of partial concealment. Defendant readily agreed and complied by moving the short distance to where Tercek stood and continued the conversation that ultimately led to the voluntary search. I do not read the facts as creating an atmosphere of coercion. The request by Tercek was objectively reasonable and was intended to facilitate a brief conversation with defendant in safety. Unlike the majority, I do not leap to the unwarranted conclusion that these facts constituted a stop. I, therefore, would reach the opposite result from the majority and would find that the search was voluntary and untainted.

I dissent.