## STATE OF OREGON,
*Respondent,*

*v.*

## ROY CHARLES MORELLI,
*Appellant.*

(89-06-33199; CA A63008)

820 P2d 1369

Jesse Barton, Deputy Public Defender, Salem, argued the cause for appellant. On the brief was Sally L. Avera, Public Defender, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

DEITS, J.

Buttler, J., dissenting.

## DEITS, J.

Defendant appeals his convictions for delivery and possession of a controlled substance, ORS 475.992, in a trial to the court on stipulated facts. He assigns as error the denial of his motion to suppress a baggie containing heroin. We affirm.

■ We take the facts from the trial court's findings. Officer Field and his partner were in uniform in a high crime area in Portland's Old Town, looking for a person, Shadd, for whom there was an outstanding arrest warrant. Field had worked in that area for 10 years and had become familiar with the drug trade practices and some cf the people who frequented the area, including defendant. He and his partner went into a restaurant in the area to look for Shadd. His partner stayed at the door, and he went to the back of the restaurant to see if he was there. He saw defendant seated in a booth in the back of the restaurant. He had just been served a meal. His right hand was between his legs and, when he looked up and saw Field standing by the table he appeared surprised. Field asked "What do you have in your hand?" When defendant did not answer, Field shined his flashlight on defendant's right hand. Defendant tried to transfer what was in that hand to his left hand, at which point Field saw a baggie that he suspected contained illegal drugs.

Defendant contends that the encounter was a stop and that it was unlawful, because Field lacked a reasonable suspicion that he had committed a crime. ORS 131.615. The state contends that the encounter was mere conversation, requiring no justification.

■ We conclude that this encounter was not a stop. A stop occurs if a police officer temporarily restrains a person's liberty either by physical force or by a show of authority. A person is stopped if, in light of all of the circumstances of the encounter, a reasonable person would have believed that he was not free to leave. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981); *State v. Johnson,* 105 Or App 587, 590, 805 P2d 747 (1991). There was no physical force used here and, based on the "totality of the circumstances," there was not a show of authority, such that a reasonable person would not feel free to leave.

■    There are only three facts which arguably could support the conclusion that there was a stop: Field's questioning of defendant, his location beside the booth as he questioned defendant and his use of the flashlight. We have held that asking a question without any further restraint is not a stop. "Mere inquiry by a police officer without restraint of liberty is not a 'stop' and requires no justification." *State v. Shelton,* 103 Or App 179, 182, 796 P2d 390 (1990), *mod* 105 Or App 570 (1991), (quoting *State v. Eisenbarth,* 93 Or App 384, 387, 762 P2d 343 (1988)). We have also held that the brief use of light does not transform an encounter into a stop. *State v. Deptuch,* 95 Or App 54, 767 P2d 471, supplemented on reconsideration 96 Or App 228, 772 P2d 442 (1989); *State v. Faulkner,* 102 Or App 417, 421, 794 P2d 821, *rev den* 310 Or 422 (1990).

The remaining question is whether Field's standing beside the booth was enough of a show of authority that a reasonable person would not have felt free to leave. We conclude that, in view of all of the circumstances, it was not enough. Field was standing in the most convenient place to converse with someone in the booth. He did not say or do anything else to restrain defendant. He simply stood by the booth and asked the questions.[1] Although the booth was dimly lit, the encounter took place in the middle of the day at a

---

[1] Officer Field testified as follows:

"Now, and Mr. Morelli was sitting in the chair at the booth?

"A Yes, he was.

"Q And against one end of the booth is a wall —

"A Yes, there is.

"Q — is that correct?

"And he would have to, in order to exit the booth, slide out?

"A Yes, he would.

"Q He couldn't go forward because that's where the table is; is that correct?

"A (No audible response.)

"The court: Answer out loud.

"A No, he wouldn't — he couldn't go forward. He'd have to come out —

"Q He couldn't go —

"A And he couldn't go left, he couldn't go back, he couldn't go forward, he'd have to come out . —

"Q Okay. Exit to the right?

"A To the right, yes.

public place and other persons were nearby. In addition, Field had had a number of casual conversations with defendant and Field knew him by name. Field testified that he had approached defendant in a casual, nonauthoritative manner.

■    A stop involves a significant restraint on a defendant. In *State v. Johnson, supra,* the encounter became a stop only after the officer asked the defendant to come out from behind some bushes to where he was standing:

> "The 15 feet that defendant walked toward the officers in response to [the officer's] request, which was away from the direction that he was walking, manifested the domination that [the officer] exercised. That show of authority converted the conversation into a stop."

In *State v. Anfield,* 95 Or App 568, 770 P2d 919 (1989), we concluded that defendant was restrained. There, officers saw defendant walking down the street at 3:25 a.m. They shone a spotlight on defendant and asked to speak to him. They then parked their car by defendant, got out and one officer stood "immediately in front of defendant" and the other stood right behind him. They asked for identification, defendant gave them a driver's license and one of the officers ran a records check.

In this case, there simply was not the same degree of restraint. Standing by a person's table in a restaurant and asking a question is not the type of domination that we have found necessary to constitute a stop. In response to Field's question, defendant could have told him that it was none of his business or he could have slid out of the booth and left. If Field had not stepped aside or had said something to restrain defendant from leaving, that would be another matter.

In *State v. Holmes,* 311 Or 400, 409, 813 P2d 28 (1991), in discussing the analogous question of whether a person is "seized" under Article I, section 9, of the Oregon Constitution, the Supreme Court stated:

> "We hold that a "seizure" of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer *intentionally and significantly restricts,*

---

"Q  Where he could have to come out is where you were standing; is that correct?

"A  Basically, yeah."

*interferes with, or otherwise deprives* an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above has occurred and such belief is objectively reasonable in the circumstances.

"* * * * *

"Under these 'seizure' standards, law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful. A street or public place encounter does not amount to an Article I, section 9 'seizure' merely because the encounter may involve inconvenience or annoyance for the citizen and the other party to the encounter is known to be a law enforcement officer. Even physical contact does not transform the encounter into a 'seizure' if it is a normal means of attracting a person's attention (*e.g.,* policeman tapping citizen on the shoulder at the outset to get a citizen's attention). *See* LaFave, 3 Search and Seizure, A Treatise on the Fourth Amendment 413, § 9.2(h) (2d ed 1987). Rather, the encounter is a 'seizure' of a person only if the officer engages in *conduct significantly beyond that accepted in ordinary social intercourse.* The pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens. *See id.*" *State v. Holmes, supra,* at 409-10. (Emphasis supplied.)

Walking up to a person in a public place in the middle of the day with other people around and asking a question is not conduct significantly beyond that accepted in ordinary social intercourse. As pointed out in *Holmes,* the fact that the defendant knows it is a police officer does not transform the encounter into a seizure or a stop. Even if defendant believed that he was not free to leave, that belief was not objectively reasonable under the circumstances. The trial court did not err in denying defendant's motion to suppress.

Affirmed.

**BUTTLER, J.,** dissenting.

The majority summarizes its holding in the last paragraph of its opinion:

"Walking up to a person in a public place in the middle of the day with other people around and asking a question is not conduct significantly beyond that accepted in ordinary social intercourse. As pointed out in *Holmes* [*State v. Holmes,* 311 Or 400, 813 P2d 28 (1991)], the fact that the defendant knows it is a police officer does not transform the encounter into a seizure or a stop. Even if defendant believed that he was not free to leave, that belief was not objectively reasonable under the circumstances. The trial court did not err in denying defendant's motion to suppress." 109 Or App at 594.

If that were all there were to this case, I would agree.

However, defendant contends that Officer Field's combined actions of confronting him in the booth, blocking his exit, asking, "What do you have in your hands?" and shining his flashlight on his hand amounted to a stop that was not supported by a reasonable suspicion that he had committed a crime. The trial court did not find that a person would not reasonably believe that Field had intended to significantly restrict, interfere with or otherwise deprive him of his freedom of movement.[1] *See State v. Holmes,* 311 Or 400, 409, 813 P2d 28 (1991). Instead, it found that *Field* did not intend to prevent defendant from leaving. Therefore, it concluded there was no stop. Presumably, the majority agrees that the trial court erred in applying that legal test.

The question is not whether Field intended to restrain defendant's liberty, but whether it was objectively reasonable, under *all* of the circumstances, for *defendant* to believe that the officer intended to restrain his liberty. *State v. Holmes, supra; State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981); *State v. Johnson,* 105 Or App 587, 805 P2d 747 (1991). Defendant had just been served his meal when Field approached him, stood by the bench on which he was seated, physically blocking defendant's only exit, and asked him what he had in his hand. When defendant did not answer, Field shined his flashlight on defendant's right hand. Under all of those circumstances, it would be objectively reasonable for a

---

[1] The trial court said:

"The Court [finds] that the placement of Officer Field by the booth was not designed to prevent the defendant to leave, it was not intended by Officer Field to prevent the defendant to leave and that the inquiry between the defendant and Officer Field was simply inquiry as a matter of interest. That no stop had occurred * * *."

person to believe that Field intended to restrict, interfere with, or otherwise deprive him of his freedom of movement. It was not necessary for defendant to abandon his meal and to attempt to force his way by Field in order to test Field's intention. Therefore, the encounter was a stop.

The state contends that, even if the encounter was a stop, Field reasonably suspected that defendant had committed a crime. It relies on these facts: Defendant was an admitted drug addict; he knew Hebert, a suspected drug dealer; Hebert had just been involved with another person in activity that Field suspected was a drug deal; the area was a high crime area; and defendant had his hand between his legs and looked surprised when he saw Field. Reasonable suspicion must be based on specific, articulable facts known to or observed by the stopping officer. ORS 131.605(4); ORS 131.615(1); *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977).

On similar facts, we held that the officer lacked the reasonable suspicion necessary to support a stop. In *State v. Moya,* 97 Or App 375, 775 P2d 927 (1989), the officers were patrolling an area of intense drug trade and knew that persons who had purchased drugs inside a hotel often consumed them in parked cars nearby. One of the officers had seen the defendant four days earlier parked by the hotel and observed her again on the evening in question. As the officers pulled alongside her car, they noticed her looking at something in her lap. When she looked up and saw them, she appeared surprised and moved her purse. In response to the questions, "What are you doing?" and "What's in the purse?", she replied, "Nothing. It wasn't even in my purse." The purse was seized and was later found to contain cocaine. We reversed the trial court's denial of the defendant's motion to suppress, noting that

> "the officers did not see any drugs or drug paraphernalia before stopping her. There is nothing remarkable about examining something in one's hands, appearing startled at a sudden confrontation with the police or denying the suggestion that one is involved in wrongdoing. When all is said and done, police suspected defendant for simply being where she was. That is an insufficient basis for a stop." 97 Or App at 378.

Similarly, in this case, nothing connected defendant to any of the activities that had occurred earlier outside the restaurant. I would hold that the facts do not support a reasonable suspicion that defendant had committed a crime before Field saw the baggie, which was after defendant had been stopped.

Because I would reverse and remand for a new trial, I dissent.

De Muniz, J., joins in this dissent.