Argued and submitted September 30, 1999, affirmed April 12, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN DAVID GLANDON,
*Appellant.*

(973588C2; CA A100464)

998 P2d 785

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

\* Deits, C. J., *vice* Warren, S. J.

## EDMONDS, P. J.

Defendant appeals his conviction for possession of methamphetamine, a controlled substance, ORS 475.992(4), following a trial to the court on stipulated facts. He assigns error to the denial of his motion to suppress evidence of the controlled substance found in a front pocket of his pants. We affirm.

At the hearing on defendant's motion to suppress, Officer Whipple testified about the circumstances leading up to the discovery of the methamphetamine. At 2:30 a.m., Whipple was sitting in his patrol car in the parking lot of the Medford Shopping Center. He observed defendant walking across the well-lighted parking lot. Whipple drove his car up and stopped behind defendant without blocking defendant's path. He did not turn on his overhead lights, spotlight or flashers. After Whipple got out of his car, he recognized defendant from previous encounters with him. Whipple approached defendant and asked if he could converse with him. Defendant said "sure." Whipple asked for identification, and defendant produced a driver's license. The officer also asked defendant if he was currently on probation. Whipple testified:

"[Defendant] stated that he was on for possession of a—a controlled substance. At that point in time, I asked him if he had any controlled substance on him and he stated, 'No.'

"Q. And what happened next?

"A. I asked [defendant] if he would mind if I checked his person to see if he had any narcotics on him.[1]

"Q. And what happened then?

"A. Then he granted permission for me to search."

Whipple testified that when he asked defendant for consent to search, he was in possession of defendant's driver's license. Defendant put his hands behind his back at Whipple's instruction, and the officer held them with his left

---

[1] On cross-examination, defense counsel asked Whipple: "When you asked for consent to search, did you tell him at any time that since he was on probation that you had the authority to do so?" The officer testified that he did not.

hand while he "began patting [defendant] down." During the patdown, Whipple felt a needle in defendant's pocket. He asked defendant what the object was, and defendant confirmed that it was a needle. Whipple testified that he asked defendant, "Do you mind if I take it out?" and defendant agreed. Whipple removed the needle from defendant's pants and seized it. Later, a lab report confirmed that there was methamphetamine residue on the needle. The residue on the needle led to the conviction before us.

Defendant also testified about the above circumstances. He testified that Whipple "never asked me for permission to search." In addition, defendant testified that the officer had placed him in handcuffs before he conducted the search.

The trial court found and ruled:

"1. On August 24, 1997, Officer Whipple of the Medford Police Department observed the Defendant, at approximately 2:40 a.m., in the parking lot of the Medford Shopping Center.

"2. Officer Whipple drove up to Defendant and got out to talk to him.

"3. Officer Whipple felt that he recognized the Defendant and asked him for identification. Defendant handed over his identification, which Officer Whipple held for two to three minutes.

"4. Upon identification, Officer Whipple realized that Defendant was on probation for possession of a controlled substance.

"5. While holding Defendant's identification, Officer Whipple asked Defendant if he could search his person, and Defendant consented.

"6. The contact between Office Whipple and the Defendant was not a stop, but was mere conversation. The retention of the driver's license under these circumstances does not convert the conversation to a 'stop.' The officer had not turned on his flashing lights, nor in any other manner conveyed the impression that Defendant had no choice but to comply.

"7. Defendant did voluntarily consent to the search of his person."

Defendant invokes both the Oregon and United States Constitutions in support of his argument that the controlled substance found on the needle must be suppressed. We first consider his arguments under Article I, section 9, of the Oregon Constitution. *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981). Defendant argues that Whipple was without authority to ask for identification and that the retention of his license constituted an illegal stop, causing him to consent involuntarily to the request to search.

■    Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

While a warrantless search is *per se* unreasonable under Article I, section 9, a consent to search is an exception to the rule. *State v. Larson*, 141 Or App 186, 197, 917 P2d 519, *rev den* 324 Or 229 (1996). Even if defendant's liberty was unlawfully interfered with by the officer's retention of the license, he is not entitled to suppression of the seized evidence if he voluntarily consented to the search and Whipple did not exploit any illegality in gaining his consent. In *State v. Rodriguez*, 317 Or 27, 38-39, 854 P2d 399 (1993), the Supreme Court explained:

"Unlawful police conduct occurring before a search made pursuant to a person's consent may affect the admissibility of evidence seized during that search * * *, the unlawful conduct may bear on the issue of voluntariness. That is, the unlawful conduct may have some effect on the state of mind of the person giving the consent, affecting whether the consent is a voluntary act of that person's free will. Where the unlawful conduct bears on the voluntariness of the consent, as in any other case where voluntariness is at issue, the state must prove by a preponderance of the evidence that the consent was voluntary. *See, e.g., State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992) ('Under the consent exception to the warrant requirement, the state must prove

by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property.') If the state fails to meet that burden, then the consent is invalid, and the search is treated as 'unreasonable' under Article I, section 9. In that event, evidence seized during the search must be suppressed to vindicate the defendant's right to be secure against the unreasonable search." (Footnotes omitted.)

In reviewing the voluntariness of defendant's consent, we are bound by the trial court's findings of historical facts if there is evidence in the record to support them. We also give weight to the trial court's credibility findings. If findings are not made on all issues, and there is evidence from which the facts could be decided in more than one way, then we will presume that the facts were decided in a manner consistent with the trial court's denial of the motion to suppress. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). Ultimately, the determination about whether a consent to search is voluntary is a legal issue that we review independently, based on the trial court's findings that are supported by the evidence. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991).

In determining whether defendant voluntarily gave Whipple consent to search, we "examine the totality of the facts and circumstances to see whether the consent was given by [the consenting party's] free will or was the result of coercion express or implied." *State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981). Although the trial court did not make specific credibility findings, its findings implicitly reject defendant's version of the circumstances. Whipple testified that his patrol car did not block defendant's path and that he had not turned on his overhead lights, spotlight or flashers. At the time that Whipple asked for and received defendant's consent to search, he was the only officer present. There is no evidence that Whipple made any overt threats or used defendant's probation status to induce defendant's consent. Neither is there evidence that the officer used his retention of the license to coerce defendant's consent, nor evidence that defendant desired to leave the officer's presence. There is merely evidence that Whipple was holding the license when he asked for consent to search.

■ Assuming without deciding that Whipple's retention of defendant's license converted the encounter into an unlawful stop, the state has met its burden of proving that defendant's ensuing consent was voluntary. The facts as the trial court found them do not support the conclusion that Whipple exploited or traded on his possession of the license so as to affect defendant's state of mind and free will and to coerce his consent. *See State v. Venturi*, 166 Or App 46, 998 P2d 748 (2000) (holding that the retention of a driver's license when asking for consent to search did not make the consent involuntary in the absence of evidence that the officer used the license as leverage).[2]

Defendant makes no separate arguments under the federal constitution, and we perceive no reason for a different result under that body of law. *See, e.g., Ohio v. Robinette*, 519 US 33, 117 S Ct 417, 136 L Ed 2d 347 (1996) (reiterating the totality of the circumstances test under federal law). Consequently, we hold that the trial court did not err in denying defendant's motion to suppress the controlled substance found on the needle.

Affirmed.

---

[2] Defendant relies on *State v. Johnson*, 105 Or App 587, 805 P2d 747 (1991), to support his position. In that case, the officer directed the defendant to alter his course so that the officer could question him about a report of a fight. 105 Or App at 591. Without any intervening circumstances, the officer asked for and procured consent to search from the defendant. Defendant asserts that Whipple's conduct is akin to what occurred in *Johnson*. We held that the consent in *Johnson* resulted from the officer's exploitation of his unlawful exercise of authority over the defendant. *Id*. In contrast, the state in this case has met its burden of demonstrating that Whipple's possession of defendant's license did not act to coerce defendant into consenting to the patdown.