Argued and submitted November 30, 1998, reversed and remanded July 7, 1999

# John ROE,
*Respondent,*

*v.*

# Jane DOE,
*Appellant.*

## (9608-06568; CA A95997)

984 P2d 344

Margaret H. Leek Leiberan argued the cause for appellant. With her on the briefs was Leiberan & Gazeley.

Wayne Mackeson argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Defendant "Jane Doe" appeals from the trial court's order that granted plaintiff "John Roe's" motion for a new trial and set aside a summary judgment it had previously entered for Doe. ORCP 64 C. Doe contends, principally, that the court erred in allowing that relief because the original summary judgment was correct and, thus, was not the product of an "[e]rror in law occurring at the trial and objected to or excepted to by the party making the application." ORCP 64 B(6). We agree with Doe and, consequently, reverse and remand for reinstatement of the original judgment.

This is an action for breach of the terms of a settlement of a prior lawsuit between the parties. In March 1995, Doe brought an action against Roe for tortiously infecting her with herpes. On May 21, 1996, the parties agreed to settle the underlying case before the Multnomah County trial court. In colloquy before the trial court, counsel recited the terms of the settlement:

"The Court record will be sealed as you have it before you, the deposition transcripts will be sealed, the medical records will be sealed, and none of that information will be reopened without an order of the Court for good cause shown.

"The audio tapes will be her personal property.

"There will be a mutual release between [Doe] and [Roe]. The parties agree in that mutual release to release each other of all claims that they have against each other arising out of this matter and that there will be no professional or personal harassment by [Roe] of [Doe]; there will be no professional or personal harassment by [Doe] of [Roe] regarding anything arising out of this lawsuit or their relationship.

"There is no gag order and [Doe] is free to speak to third parties regarding this matter. And specifically, the concern that she had regarding that harassment that we talked about with the Court is if she is asked or discloses to third parties that [Roe] has herpes, that is not harassment, that is a fact, and that was the problem that the word 'harassment' brought up in her mind that we discussed with the Court that needed to be clarified on the record.

"* * * * *

"And [Doe] can tell people that [Roe] infected her. That is a fact and that is not part of the gag order.

"* * * * *

"[Doe] can recite her belief that he infected her."

On August 16, 1996, the trial court signed a final judgment that incorporated by reference that oral description of the terms of the settlement agreement. On August 28, 1996, less than two weeks after the entry of the judgment incorporating the settlement, newspapers and broadcast media in the Portland metropolitan area published accounts detailing Doe's allegations against Roe and the settlement. On August 29, 1996, Roe brought this action against Doe for breach of the settlement agreement, alleging that Doe "disclosed sealed or otherwise non-disclosable information to the press and others" and that "[c]ertain disclosures and conduct by the Defendant [were] in breach" of the settlement agreement.

Doe subsequently moved for summary judgment, submitting, *inter alia*, her own affidavit that acknowledged that she had disclosed information concerning her claims and the settlement to third parties, including press entities, but that indicated that the documents she had disclosed did not include documents sealed pursuant to the settlement agreement. Doe asserted that her disclosures were explicitly permitted under the terms of the settlement and, thus, that there was no breach. Roe opposed summary judgment, submitting his unsigned affidavit in which he recited his subjective understanding that, under the settlement agreement, documents in the tort case were to be sealed and that information in those documents was not to be disclosed to the press. Roe further asserted that such disclosure was "harassment" in breach of the settlement agreement. The trial court granted summary judgment for Doe, determining, in part:

"3. The agreement to seal medical records protected only the actual records, and was not a gag order.

"4. The agreement provided that there was no gag order or limitation on what [Doe] could say; and, in fact, the agreement specifically provided that [Doe] could talk to third

parties and tell them of her belief that [Roe] infected her with herpes.

"5.   The conduct of [Doe] was not a breach of the agreement or a violation of the court order.

"6.   The conduct of [Doe] in telling third parties was not harassment of [Roe] because the agreement specifically allowed [Doe] to do so."

On November 13, 1996, the trial court entered judgment for Doe.

Roe timely moved, pursuant to ORCP 64 C, for a new trial and to set aside the judgment. That motion raised five alternative grounds, but argued, principally, that the nondisclosure provisions of the settlement agreement were ambiguous in several material respects and, consequently, entry of summary judgment represented an "error in law." ORCP 64 B(6). With his memorandum in support of the new trial motion, Roe proffered, for the first time, evidentiary materials substantiating his understanding of the agreement.[1] The trial court allowed the motion for a new trial. In its oral comments, the trial court observed that it was going to allow the motion in order to

"sit down and figure out what the right answer is, or as close to the right answer as I can get, which may not please [Roe's attorney] either, but at least * * *

"* * * * *

"We won't be under the pressure cooker. And I can say, if anyone asks me later, that I went back and looked at every one of the those allegations and I'm still satisfied that third parties still means you can talk to the media.

"* * * * *

"I have an obligation to the court system, if nothing else, and I can't do that and have it done by the [55th day]."

The trial court subsequently entered its order allowing Roe's motion:

---

[1] It is undisputed that those materials were available to Roe at the time he filed his opposition to summary judgment, but that he chose not to proffer them at that time.

"1. Plaintiff's Motion for New Trial is granted, and the Final Money Judgment for defendant entered herein on November 19, 1996 is set aside and vacated;

"2. The court shall reconsider its ruling on defendant's Motion for Summary Judgment in light of the evidence presented by plaintiff in support of his Motion for New Trial, and rule further[.]"

On appeal, ORS 19.205(2)(d),[2] Doe challenges the trial court's disposition on three grounds: (1) To the extent that the trial court purported to allow the new trial motion merely to obtain more time to consider the merits of the motion, that constituted an abuse of discretion. (2) The trial court erred in denying Doe's motion to strike Roe's evidentiary exhibits that were submitted, for the first time, with Roe's new trial motion. (3) The trial court erred in allowing the new trial motion in that Roe failed to establish any of the bases for that relief. ORCP 64 B(1) to (6); ORCP 64 C.

■   Doe's first argument is based on the trial court's oral comments following argument on the new trial motion. *See* 161 Or App at 481. From those comments, Doe interpolates that the trial court's sole reason for setting aside the summary judgment was to give the court more time to review the new trial motion. Doe contends that that is not a permissible ground for granting a new trial under ORCP 64 B, and that the trial court, in so ruling, impermissibly circumscribed and subverted the 55-day limit prescribed in ORCP 64 F.[3]

---

[2] ORS 19.205 provides, in part:

"(2) For the purpose of being reviewed on appeal the following shall be deemed a judgment or decree:

"* * * * *

"(d) An order setting aside a judgment and granting a new trial."

*See, e.g., Carter v. U. S. National Bank*, 304 Or 538, 546, 747 P2d 980 (1987) (order granting a motion to set aside a summary judgment is an appealable judgment).

[3] ORCP 64 F provides:

"A motion to set aside a judgment and for a new trial, with the affidavits, if any, in support thereof, shall be filed not later than 10 days after the entry of the judgment sought to be set aside, or such further time as the court may allow. When the adverse party is entitled to oppose the motion by counter affidavits, such party shall file the same within 10 days after the filing of the motion, or such further time as the court may allow. The motion shall be heard and determined by the court within 55 days from the time of the entry of the

■ The short, and decisive, answer to Doe's argument is that it ignores the explicit language of the trial court's written order. Whatever the court's oral comments, that order was not an "interim" order subject to further consideration. Instead, the order finally and unconditionally granted the motion for a new trial. That writing controls. *See, e.g., State v. Swain/Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974) (court's written order controls, not statement made at conclusion of hearing); *State v. Jackson*, 141 Or App 123, 126, 917 P2d 34 (1996) (written judgment prevails over oral statements by court that underlie judgment). Accordingly, we review the allowance of the new trial to determine whether any of the grounds advanced in support of the motion was well-taken. *Williams v. Laurence-David*, 271 Or 712, 718, 534 P2d 173 (1975); *Herrell v. Johnson*, 136 Or App 68, 72, 899 P2d 759 (1995).

We proceed to Doe's third assignment of error, which generally challenges the allowance of a new trial as unsupported by any of the grounds identified in ORCP 64 B(1) to (6).[4] ORCP 64 B reads as follows:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"B(1)  Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial.

"B(2)  Misconduct of the jury or prevailing party.

"B(3)  Accident or surprise which ordinary prudence could not have guarded against.

"B(4)  Newly discovered evidence, material for the party making the application, which such party could not

judgment, and not thereafter, and if not so heard and determined within said time, the motion shall conclusively be deemed denied."

[4] As will become apparent, our analysis of Doe's second assignment, which challenges Roe's submission of new evidence in seeking a new trial, is subsumed within our treatment of the third assignment of error.

with reasonable diligence have discovered and produced at the trial.

"B(5)  Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"B(6)  Error in law occurring at the trial and objected to or excepted to by the party making the application."

ORCP 64 C reads:

"In an action tried without a jury, a former judgment may be set aside and a new trial granted on motion of the party aggrieved on any grounds set forth in section B of this rule where applicable. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions, and direct the entry of a new judgment."

In his motion for a new trial, Roe argued that the trial court had committed multiple "errors of law," ORCP 64 B(6), in allowing summary judgment and, particularly, that the trial court had erred in: (1) granting summary judgment against all of Roe's claims when Doe did not move for summary judgment against all the claims and allegations of breach; (2) refusing to accept Roe's First Amended Complaint; (3) refusing Roe's request for an extension of time to obtain discovery; (4) making findings of fact on uncontroverted evidence, when Doe, the moving party, did not submit an affidavit reciting her understanding of the settlement agreement and sealing order; and (5) granting summary judgment in that ambiguity in the settlement agreement presented triable issues of material fact. Roe further contended that, in all events, the factual materials he submitted in support of his motion for new trial warranted the allowance of relief under ORCP 64 C.

■    Before addressing the sufficiency of the evidence of Roe's showing under ORCP 64 B, we address his contentions that, regardless of whether he demonstrated any basis for relief under ORCP 64 B, he was, nevertheless, entitled to relief under ORCP 64 C. Roe asserts that the court's authority under that provision, which pertains to matters tried to the court, is broader than under ORCP 64 B. Roe argues:

"ORCP 64D requires only that the grounds in support of a motion for a new trial must be 'plainly specified,' not that the grounds are limited to those specified in ORCP 64B. In addition, ORCP 64C provides that in a case tried without a jury, such as the instant case, a former judgment 'may' be set aside for any of the grounds set forth in ORCP 64B where applicable, not that a former judgment 'can only' be set aside on those grounds. Indeed, in cases tried without a jury, ORCP 64C grants broad authority to the trial court to open the judgment, to take additional testimony, to amend or make new findings of fact, to amend or make new conclusions of law, and to direct the entry of a new judgment.

"* * * * *

"This action was tried, albeit on summary judgment, without a jury. The trial court had broad authority under ORCP 64C to order a new trial or may instead reopen the judgment, take additional testimony, and to amend or make new findings of fact and conclusions of law."[5]

■■ Roe is wrong. Nothing in the text of ORCP 64 or in Oregon law supports the proposition that a court, under ORCP 64 C, can *grant* a new trial on grounds other than, and beyond, those specified in ORCP 64 B. Rather, ORCP 64 C explicitly refers to the grounds identified in ORCP 64 B as the grounds for allowing a new trial. It is true that, under ORCP 64 C, *once a judgment is set aside*, the court may "take additional testimony," but that is only *after* the motion to set aside has been granted.[6] Nothing in the text of the rule or in our decisions suggests that a party who has lost a summary

---

[5] ORCP 64 D provides:

"In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the court. When the motion is made for a cause mentioned in subsections (1) through (4) of section B of this rule, it shall be upon affidavit, setting forth the facts upon which the motion is based. If the cause is newly discovered evidence, the affidavits of any witness or witnesses showing what their testimony will be, shall be produced, or good reasons shown for their nonproduction."

[6] *See, e.g., Turudic v. Stephens*, 149 Or App 437, 441, 943 P2d 1110 (1997):

"The result of allowing the motion generally is that the judgment is set aside and a new trial is ordered; however, in the case of a trial without a jury, the court is not required to order a new trial and instead may reopen the record, take additional evidence, amend its findings of fact and conclusions of law or make new ones and direct entry of a new judgment accordingly."

judgment may come in later and, by submitting additional evidence available to the party at the time the summary judgment was litigated, create a disputed issue of material fact after the fact. If that were true, every time a party lost a summary judgment based on the court's determination that there were no disputed issues of material fact, the party would be free to get a "second bite" by filing a "supplemental" new trial motion. ORCP 64 does not sanction such subterfuge. Thus, Roe's belated attempt to "improve his lie" fails both as a matter of law and of common sense.[7]

We return, then, to whether the trial court's allowance of a new trial comported with ORCP 64 B(1) to (6). Although, as noted, Roe raised a battery of arguments in support of his motion, on appeal he concedes, either directly or by implication, that only the last of those arguments—that ambiguities in the settlement agreement raised triable issues of fact precluding summary judgment—could warrant a new trial. We have reviewed Roe's other original arguments and agree, without elaboration, that they could not support a new trial. Consequently, the inquiry reduces to whether the trial court originally erred in determining that the settlement agreement was unambiguous and that, as a matter of undisputed fact, Doe's conduct did not breach the settlement. If, in allowing summary judgment, the trial court did not so err, then it necessarily erred in granting a new trial, and we must reverse.

As the party moving for summary judgment, Doe had the burden of showing that there were no genuine issues of material fact and that she was entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We view the record as the trial court would have, in the light most favorable to Roe, the party opposing the motion. *Id.* The relevant record, for purposes of that review, is, of course, the record that was before the trial court at the time it considered and allowed the summary judgment motion.

---

[7] As noted, Roe concedes that the additional submissions were not "newly discovered evidence" within the meaning of ORCP 64 B(4).

■      On appeal, as in moving for summary judgment, Doe contends that the plain language of the settlement agreement permitted her, without limitation, to tell third parties that Roe had infected her with herpes and that her disclosures to the press were merely a species of permitted third-party disclosures. She further asserts that her uncontroverted affidavit established that the documents she disclosed to the press were not documents subject to the sealing order. Roe responds that the settlement agreement explicitly prohibits harassment—that is, that the agreement permits disclosures to third parties only to the extent that those communications do not professionally or personally harass the other party—and that Doe's disclosures to the press constituted "harassment." Roe alternatively contends that, at the least, the meaning of "harassment" as used in the settlement agreement and, particularly, the appropriate interplay between the agreement's "third party disclosure" and "anti-harassment" provisions presented factual issues not susceptible to summary judgment.

■      The dispositive question is, thus, one of contractual construction. In construing a contractual provision, we follow the process prescribed in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). First, we examine "the text of the disputed provision, in the context of the document as a whole[, and if the meaning of] the provision is clear the analysis ends." *Id.* at 361.[8] A provision of a contract is unambiguous if it is capable of only one reasonable interpretation. *See id.* at 363-64. Second, if, but only if, an ambiguity exists, then we "examine extrinsic evidence contradicting the parties' intent." *Id.* at 363. Finally, if the meaning of a disputed contractual provision is still ambiguous after completion of the first two steps,

---

[8] "When considering a written contractual provision, the court's first inquiry is what the words of the contract say * * *. To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of a contract as a matter of law." *Yogman*, 325 Or at 361 (quoting *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995) (citations omitted)).

then we resort to appropriate maxims of construction. *Id.* at 364.

Here, the settlement agreement expressly provides that "there is no gag order and [Doe] is free to speak to third parties regarding this matter." The agreement further provides that "there will be no professional or personal harassment" of either party by the other. The agreement does not define the term "harassment." However, it *does* specify that certain conduct is *not* harassment. In particular, the agreement states that "if [Doe] is asked or discloses to third parties that [Roe] has herpes, *that is not harassment,*" (emphasis added), and "[Doe] can tell people that [Roe] infected her. That is a fact and that is not part of the gag order." That language is unqualified and admits to only one reasonable interpretation: Doe was free to tell *any* third party, without limitation, that Roe had infected her. That is not "harassment" within the terms of the agreement. Contrary to Roe's assertion, nothing in the agreement's plain language limits "third parties" to nonmedia third parties. Bluntly, the agreement does not say that "Doe is free to speak to third parties, except the press, regarding this matter." *See* ORS 42.230 (in construing a document, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted"). Thus, the trial court properly concluded, in granting summary judgment, that the operative terms of the settlement agreement were unambiguous.

Roe's complaint did not identify with particularity the alleged breaching disclosures. However, in moving for summary judgment, Doe identified the materials that she provided to the media and included copies of the newspaper articles that resulted from her communications with them. Those uncontroverted submissions established that Doe's communications with third parties did not violate the settlement agreement.

The trial court correctly allowed summary judgment for Doe. Consequently, it erred in allowing Roe's motion to set aside that judgment and for a new trial.

Reversed and remanded for entry of judgment for defendant.