Argued and submitted February 4, affirmed December 6, 2000,
petition for review denied April 17, 2001 (332 Or 56)

# STATE OF OREGON,
*Respondent,*

*v.*

# LAUREL ALICE HELOW,
*Appellant.*

(961037693; CA A100848)

15 P3d 103

Walter J. Ledesma, Deputy Public Defender, argued the cause and filed the brief for appellant. With him on the brief was David E. Groom, Public Defender.

Laurel Alice Helow filed the supplemental brief *pro se*.

Alycia N. Sykora, Assistant Attorney General, argued the cause and filed the brief for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Haselton and Armstrong, Judges.

EDMONDS, P. J.

Armstrong, J., dissenting.

## EDMONDS, P. J.

Defendant appeals an enhanced sentence following a conviction for delivery of a controlled substance. ORS 475.992(1); ORS 475.996. She assigns as error the trial court's denial of her motion to suppress. Defendant contends that the opening of a piece of folded paper in her purse exceeded the scope of her consent to search the purse. We affirm.

The specific historical facts surrounding a warrant-less, consensual search are critical in determining whether a search has exceeded its lawful scope. *State v. Weaver,* 319 Or 212, 214, 874 P2d 1322 (1994). Here, the trial court made detailed findings. We set forth the facts as they were found by the trial court and are bound by those findings because there is evidence in the record to support them. *State v. Ehly,* 317 Or 66, 75, 854 P2d 421 (1993).

In October 1996, defendant's car was stopped by an officer in Multnomah County because the car and its driver, defendant, matched the description of a car and suspect in an alleged check forgery. Upon questioning, defendant admitted having been at the business where the forgeries occurred, but she denied having tried to cash a check there. The officer asked defendant for consent to search her car and its contents for checks, which defendant granted. Defendant initially stood behind her car smoking a cigarette and then engaged in a field sobriety test with a backup officer, while the search took place. The officer searched the front seat, glove compartment and trunk of defendant's car. Defendant's purse was in the front seat. The officer first opened the purse. In the purse, he found .23 grams of methamphetamine in a baggie and a glass pipe. Stored above the driver's sun visor, the officer also found checks issued in names other than the one given by defendant, a checkbook, and a suspicious identification card containing defendant's picture. In the trunk, the officer found a duffel bag containing more checks. The bag also contained a scale that later tested positive for controlled substance residue. The officer arrested defendant, seized the purse and duffel bag and arranged for her car to be towed.

After defendant was transported to the police station, the officer made an inventory of the contents of the duffel bag and then searched defendant's purse in her presence more meticulously. During the search, the officer found various receipts and papers in the purse. He questioned defendant about the documents as he removed them from her purse. He also found an 8½ x 11 sheet of paper in the purse, folded into eighths, with handwriting visible on the exposed surfaces of the paper. The officer unfolded the paper and found within it notations that appeared to be a drug transaction record.

The information visible on the paper when folded includes columns of numbers and the words, "Bal? prepayment bal." The paper when unfolded contains many different handwritten notations, including: "3 1/4 oz. Denise," "1/4, 1/4, 1/4;" "1/6," "1/2," "1/4," and the comment, "260 bal. from b-day week?" It also contains numerous arithmetical calculations, a name and address, information about a birth at Emanuel Hospital including the names of a "mother" and "father" and time of birth, and comparisons of ages with birthdates. Defendant made no objection at the time to the opening of the paper.

Before trial, defendant objected to the admission into the sentencing record of the information on the inside of the paper, asserting that the officer exceeded the scope of her consent to search by unfolding the paper. The trial court, in denying the motion to suppress, ruled,

"given * * * the manner in which or the purpose for which consent was requested, and we're looking for paper checks, ID, all the kinds of things that are related to that, [the officer] is not in an area where he is not reasonably permitted to go."

At sentencing, the trial court relied on the information on the inside of the paper to support a finding that defendant's possession of controlled substances was a commercial

drug offense under ORS 475.996(1)(b).[1] Accordingly, defendant was sentenced to 23 months' imprisonment with a postprison supervision period of 36 months. On appeal, defendant assigns error to the enhanced sentence. She does not dispute that the paper is a record of drug transactions. Instead, she contends that the scope of the search was limited by the officer's own request to a search for "checks," that the officer personally did not believe that the paper was a check or contained a check within its folds when he opened it and that his act of unfolding the paper was an unlawful search because it exceeded the scope of her consent. Because her sentence was enhanced as a result of the use of the information on the paper, defendant requests a remand for resentencing without reference to the information on the inside of the paper. We review to determine whether unfolding the paper was lawful under Article I, section 9, of the Oregon Constitution.[2]

■        Article I, section 9 requires that the scope of a defendant's consent be evaluated on the specific facts surrounding the grant of consent. *State v. Ehly*, 317 Or at 74. The test is what "a typical reasonable person would have understood by the exchange between the officer and the suspect[,]" and the intent of the parties is determined objectively in light of the

---

[1] ORS 475.996 provides, in part:

"(1) A violation of ORS 475.992 shall be classified as crime category 8 of the sentencing guidelines grid of the Oregon Criminal Justice Commission if:

"* * * * *

"(b) The violation constitutes possession, delivery, or manufacture of a controlled substance and the possession, delivery or manufacture is a commercial drug offense. A possession, delivery or manufacture is a commercial drug offense for purposes of this subsection if it is accompanied by at least three of the following factors:

"(A) The delivery was of * * * methamphetamine * * * and was for consideration;

"* * * * *

"(E) The offender was in possession of drug transaction records or customer lists;

"(F) The offender was in possession of stolen property[.]"

[2] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

totality of the circumstances surrounding the grant of consent in a particular case. *State v. Arroyo-Sotelo*, 131 Or App 290, 295, 884 P2d 901 (1994), *quoting Florida v. Jimeno*, 500 US 248, 251, 111 S Ct 1801, 114 L Ed 2d 297 (1991).

■ Here, the officer testified:

"Q. And so exactly what did you ask the defendant when you asked for consent to search the car?

"A. I asked her if I could search the vehicle and its contents for any checks.

"Q. Okay. And what was her response?

"A. She said I could.

"* * * * *

"Q. When she gave her consent, did she qualify her consent at all?

"A. I'm sorry.

"Q. Did she restrict where you could search?

"A. No, she did not."

Defendant's testimony about the same conversation was:

"Q. Can you tell me to the best of your recollection what words he used when he asked for permission to search the car?

"A. He said—well, he asked if I or if he could search the vehicle for checks.

"Q. Did he say the word 'contents?'

"A. No.

"Q. Did he say, 'search the vehicle for checks'?

"A. Yes, he wanted to look in the vehicle for checks.

"Q. Did you give him his permission?

"A. Yes, I did."

In *Arroyo-Sotelo*, we said that, "the scope of a consent search generally should be interpreted to include those areas where the items that are the subject of the search

*might be found.*" 131 Or App at 297 (emphasis added). In light of the fact that the object of this search was checks, it was reasonable for the officer to examine the contents of a purse found in the front seat of the car. Nonetheless, defendant argues that it was unreasonable to unfold the paper in the purse to search for checks. We disagree because of the outward appearance of the paper.

The paper, when folded, could have contained checks within its folds. Visible on the outside of the paper are numbers, financial calculations and the notations "prepayment" and "balance." At the time that the folded paper was opened, the officer had already found other checks that were loose in defendant's belongings. The officer could reasonably have inferred that there might be more checks folded up within the paper, particularly when defendant made no objection as the officer began to unfold the paper in her presence. *Cf. State v. Allen*, 112 Or App 70, 75, 826 P2d 127, *rev den* 314 Or 176 (1992) (holding that the defendant consented to the search of his suitcase because he did not withdraw his consent, even when it became apparent the officer was going to open the suitcase).

Defendant raises one additional argument that merits discussion. She contends that even if her consent was broad enough to permit the officer to unfold the paper to look for checks, the paper was unfolded because the officer was "curious" rather than because he was looking for checks. She relies on the following testimony by the officer:

"Q. * * * [B]ut if it was folded would you be concerned that within that fold there would be weapons or means of escape?

"A. No.

"Q. So if you unfolded it, you would have no reason to unfold it —

"A. Correct.

"Q. —other than curiosity?

"A. Yes."

We have not found, nor have we been directed to any precedent that decides this issue under Article I, section 9,

which prohibits only "unreasonable" searches and seizures. We note that consensual searches do not invade the privacy interest of citizens in contrast to the invasions that occur during searches based on probable cause. A consensual search is one to which the holder of those privacy interests has agreed and on which limitations can be imposed at the will of the holder.

Under the Fourth Amendment, consensual searches have been held constitutional where the consent was given for one expressed purpose and the requesting officers had other motivations. *See, e.g., U.S. v. White*, 706 F2d 806 (7th Cir 1983) (the defendant consented to a search of his flight bag for drugs, and the officers conducting the search intended to search for money and jewelry); *Amin v. State*, 695 P2d 1021 (Wyo 1985) (the defendant consented to a search of his car for evidence of sexual assault, but when the officer learned he was a robbery suspect, the officer also searched for evidence of the robbery); *State v. Watson*, 416 So 2d 919 (La 1982) (the defendant consented to a request to search his suitcase for identification, and the officers had the undisclosed and additional purpose of searching for drugs). Although those precedents are not controlling, they indicate how other courts have viewed the implications of similar constitutional provisions. Finally, the evidence is not clear that the officer's motivation in unfolding the paper was for other than his stated purpose at the beginning of the search. His "curiosity" could have been prompted by his prior discovery of other checks.

In the final analysis, we adhere to our pronouncement in *Arroyo-Sotelo* that our inquiry is one of objective reasonableness rather than a subjective inquiry into the motivation of the officer requesting consent.[3] We hold that the lawfulness of a consent search is circumscribed by the scope of the consent given and that even though the officer in this case may have had a single motive or multiple motives when he unfolded the paper, his conduct was permissible under

---

[3] Because of the facts of this case, we do not attempt to explore what our concerns might be in the event that an officer affirmatively misrepresents the purpose or the intended scope of the search. *See* Wayne LaFave, *Search and Seizure*, 711 (3d ed 1996).

Article I, section 9, because it was within the scope of consent voluntarily given by defendant. Consequently, we conclude that the trial court did not err in using the information from inside the paper to enhance defendant's sentence.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that it does not matter whether the officer acted out of curiosity when he opened the folded paper from defendant's purse or because he believed that defendant had consented to his doing so. The majority is wrong. Article I, section 9, of the Oregon Constitution, requires a police officer to be consciously aware of the authority by which the officer acts when he intrudes into another person's property and to conform his conduct to his understanding of that authority. Consequently, if the officer unfolded the paper because he was curious about what he might find, rather than because he believed that defendant had consented to his doing that, the officer violated Article I, section 9. Because the trial court did not resolve whether, in fact, the officer unfolded the paper pursuant to defendant's consent, we should vacate the judgment and remand the case for the trial court to resolve that issue.

The majority is correct that no Oregon case has addressed the precise question presented here. However, properly understood, the Supreme Court's decision in *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986), governs the resolution of it.

*Owens* involved a warrantless search incident to a lawful arrest. In upholding that search, the court held that a search incident to arrest is valid under Article I, section 9,

> "when it relates to a crime which there is probable cause to believe that the arrestee has committed, and when [the search] is reasonable in all the circumstances. This probable cause requirement properly limits the objects to be sought in searches incident to arrest, and thus limits the intensity of the search."

*Id.* at 204 (citation omitted). The court further explained:

"When there is probable cause to arrest a suspect for a crime, a reasonable search incident to arrest for evidence of that crime may be upheld, even if the officer does not articulate to the arrestee that this is the crime for which he is being arrested and searched. Probable cause under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances. The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience. Neither is the test whether the officer articulates to the suspect the basis for a second ground for arrest. What is required is that the officer formulates such a basis to himself at the time he acts."

*Id.* (original emphasis; citation omitted).

As the quoted statements indicate, *Owens* establishes that Article I, section 9, requires police officers both to have lawful grounds to search or seize property and to consciously conclude that they have lawful grounds to do that before searching or seizing property. That is a distinctive feature of Oregon constitutional law. The Fourth Amendment is not understood to impose a similar limitation on police conduct. *See, e.g., Whren v. United States*, 517 US 806, 811-15, 116 S Ct 1769, 135 L Ed 2d 89 (1996).

The effect of the Oregon analysis is to require courts to look at a search from the perspective both of the person whose property is searched and of the officer who conducts the search. The objective component of the analysis addresses the former perspective. It considers whether the search intruded to a degree greater than the law permits. The subjective component addresses the officer's perspective. Irrespective of whether the search stayed within the bounds that the law permits, the subjective component considers whether the officer believed that she had authority to intrude to the degree that she did. If the officer did not believe that

she had that authority, then, under the Oregon analysis, the search violates Article I, section 9.[1]

The Oregon analysis gives effect to the oft-stated principle that we are a government of laws and not of people. It does that by seeking to ensure that those who enforce the law are guided by it when they act, thereby giving effect to the indisputable principle that a police officer should not, in fact, use her authority as an officer to conduct a search that she does not believe that she has authority to conduct. In other words, it says to officers that they are to act in the belief that the law authorizes their actions, rather than in the belief that they should act and let someone else, most commonly a judge, decide later whether they acted lawfully. Of course, a challenge to the lawfulness of a search will require a court to consider whether the officer acted lawfully, but that does not mean that the officer does not also have a legal obligation to resolve that issue when the officer acts. *Owens* recognized that the officer does have that obligation.[2]

The majority analyzes the consent search at issue in this case solely from an objective perspective, thereby distinguishing a warrantless consent search from a warrantless search incident to an arrest. I believe that the principle

---

[1] In effect, *Owens* establishes that a search is unreasonable and, hence, violates Article I, section 9, if it is conducted by an officer who does not consciously believe that she has the authority to conduct it, as well as when the search exceeds the scope permitted by the relevant law.

[2] Police officers have the same obligation as do judges to conform their conduct to law. Officers cannot conduct a search that they have failed to determine is one that they are authorized to conduct any more than judges can uphold a search that they have failed to determine is one that the officers were authorized to conduct. All that *Owens* did was to give meaning to the recognized obligation that officers have to determine that they have authority to conduct a search before they conduct it. They have that obligation because Article I, section 9, applies to all three branches of government. That means that police officers are legally obliged to comply with Article I, section 9, when they search or seize property. They can fulfill that obligation only if they consider the effect of Article I, section 9, on their actions *before* they act. Although courts do not enforce all recognized legal obligations (for example, they do not provide a means by which to challenge a warrant on the ground that the judge who signed it violated Article I, section 9, by failing to consider whether it was based on probable cause), *Owens* establishes that Oregon courts *do* enforce the obligation that police officers have to determine their authority to search or seize property before they act on that authority.

established in *Owens* applies equally to both.[3] From the perspective of the person whose property is searched, the objective issue in both searches is the same: Is the intrusion reasonable because it is one that the law allows, whether because of consent or because of the principles applicable to searches incident to arrest? There is no reason that the subjective issue established in *Owens* does not apply to both types of searches as well: Did the officer act pursuant to the authority that the law gave him to intrude into property as he did?

Because the trial court did not resolve whether the officer unfolded the paper in the belief that defendant's consent gave him authority to do that, I believe that we must remand this case for the court to determine that.[4] I therefore dissent from the majority's conclusion that Article I, section 9, does not require the trial court to resolve that issue.

---

[3] The principle applies to searches pursuant to a warrant as well. If an officer searches a place or thing that the officer does not believe that the warrant authorized her to search, the officer violates Article I, section 9, even if the warrant otherwise authorized the search.

[4] It is worth noting that an officer does not violate Article I, section 9, by acting with mixed motives in conducting a search. For example, in this case the officer could have believed that defendant's consent gave him authority to unfold the paper, because it could contain a check, yet have also believed that it was more likely that the paper would contain something else and have been curious about what he would find. That curiosity would not render the search invalid.