Argued and submitted June 28, affirmed November 13, 2002

# STATE OF OREGON,
*Appellant,*

*v.*

# JEFFREY ALAN BUCHANAN,
*Respondent.*

## CR000813; A114038

57 P3d 930

Christina M. Hutchins, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Peter Gartlan, Chief Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Acting Executive Director.

Before Edmonds, Presiding Judge, Deits, Chief Judge,* and Kistler, Judge.

KISTLER, J.

Edmonds, P. J., dissenting.

---

* Deits, C. J., *vice* Warren, S. J.

**KISTLER, J.**

The state appeals from a pretrial order suppressing a gun seized from defendant. It argues that the trial court erred when it ruled that the officer's search exceeded the scope of defendant's consent. We affirm.

On May 18, 1999, Officer Thomas Broomfield of the Milwaukee Police Department was looking for a suspect named Ivan. Broomfield had no description other than an approximate age and that the suspect was male. At about 11:00 a.m., Broomfield noticed defendant walking through the parking lot of a shopping center towards a bar. Broomfield stepped out of a marked patrol car, called to defendant, and asked whether he could speak with him for a minute. Defendant walked over to the officer. Broomfield told defendant that he was looking for someone and asked defendant if he had any identification on him. Defendant replied that he did not. Broomfield asked whether defendant "had a wallet or anything with his name on it," and defendant told him that he did not. Broomfield said, "[Y]ou know, it's kind of odd you are going in this bar, [but] you don't have any identification or anything." Defendant responded, "Well, I am definitely over 21 years old." According to the trial court, "The officer then asks the defendant to turn around so he can see if the defendant has a wallet. The defendant acquiesced to this request."

When defendant turned around, his flannel shirt was hanging over his pants. Broomfield reached out and lifted defendant's shirt. He explained:

> "Well, I couldn't really see his pockets because of the shirt hanging down. So I just kind of reached down and pulled the shirt up a little bit. I could see his pockets. And in his— one of the back pockets I could see kind of a bulge. And I leaned forward. There was a couple of lottery tickets sticking out of the pocket. And I leaned forward. And when I leaned forward to look into the pocket, I could see a handgun in there."

Based on the evidence that Broomfield uncovered, the state charged defendant with being a felon in possession of a firearm and unlawful possession of a firearm. *See* ORS 166.270; ORS 166.250.

Before trial, defendant filed a motion to suppress, arguing that Broomfield had unlawfully stopped and searched him. The trial court found that Broomfield's contact with defendant was "a mere casual encounter" and that, when the officer asked defendant to turn around, "this came close to, but did not constitute a 'stop.' " The court ruled, however, that Broomfield searched defendant when he lifted his shirt and that Broomfield's act went beyond the scope of defendant's consent. The trial court reasoned, "Never did he ask the right to invade the defendant's privacy by lifting his shirt and peering in the rear pocket. And that, to me, it is an invasion of his privacy." The court accordingly granted defendant's motion and suppressed the gun as well as defendant's statements to police.

On appeal, the state does not dispute that Broomfield searched defendant when he lifted his shirt and saw what he could not otherwise have seen. *See Arizona v. Hicks*, 480 US 321, 107 S Ct 1149, 94 L Ed 2d 347 (1987); *State v. Portrey*, 134 Or App 460, 896 P2d 7 (1995). Rather, it argues that defendant consented to the search. More specifically, the state argues that a reasonable person would have understood that acquiescing in the officer's request "to turn around so that he c[ould] see if the defendant ha[d] a wallet" gave the officer permission to lift defendant's shirt in order to look inside his pockets.[1] Defendant responds, among other things, that Broomfield exceeded the scope of the consent because "there is a qualitative difference between turning around to give an officer a full exterior view (which is precisely what this officer requested) versus allowing an officer to grab and lift one's shirt to obtain a more intimate view."

Under Article I, section 9, of the Oregon Constitution, the scope of a person's consent does not turn on what

---

[1] Although the state relies on a slightly different version of what Broomfield said, we have quoted the trial court's finding of what Broomfield asked defendant.

that person subjectively intended. *State v. Jacobsen*, 142 Or App 341, 349, 922 P2d 677 (1996); *State v. Arroyo-Sotelo*, 131 Or App 290, 294-96, 884 P2d 901 (1994). Rather, it turns on what a reasonable person would have intended. *Id.* That determination presents a question of law. *Id.* We have recognized, however, that we cannot divorce that legal determination from the historical facts that the trial court found, which are often critical in determining the scope of consent. *State v. Helow*, 171 Or App 236, 240-41, 15 P3d 103 (2000), *rev den*, 332 Or 56 (2001); *Arroyo-Sotelo*, 131 Or App at 294. The specific request that the officer made, the stated object of the search, and the surrounding circumstances all bear on our determination of the scope of a person's consent. *Arroyo-Sotelo*, 131 Or App at 296-97.

Broomfield's request, as found by the trial court, divides into three parts: Broomfield asked defendant (1) to turn around (2) so that he could see (3) whether he had a wallet. We begin with the third part of Broomfield's request: Broomfield wanted to see whether defendant had a wallet in his back pocket. Broomfield did not ask defendant to turn around so that he could see whether defendant had any identification on him—a request that, if granted, would have entailed examining the contents of defendant's pockets. Rather, Broomfield asked defendant to turn around so that he could see whether defendant had a wallet—a fact that is often apparent from the bulge (or the absence of a bulge) in a person's back pocket. The stated object of Broomfield's request was consistent with a visual inspection of defendant's person.

The first two parts of Broomfield's request point in the same direction. Broomfield asked defendant "to turn around" so that he could see whether he had a wallet on him. Broomfield did not ask defendant whether he could look inside his pockets or engage in some other type of search. His request—to turn around—was more limited. That request, if accepted, would have permitted Broomfield to see what he could have seen without consent had he walked behind defendant and viewed him from a different vantage point. The reason that Broomfield asked defendant to turn around reinforces that conclusion. The trial court found that

Broomfield asked defendant to turn around so that he could *see* whether defendant had a wallet on him.

In the absence of an explicit request to search, and there was none here, we should be hesitant to convert a request to turn around into a request to lift defendant's clothes and examine the insides of his pockets, at least where the object of Broomfield's request could, in the normal course, be discovered by means of a visual inspection.[2] Additionally, defendant never expressly agreed to Broomfield's request. Instead, as the trial court found, defendant "acquiesced" in it. Acquiescence connotes a limited acceptance,[3] and, in light of defendant's limited acceptance, we should interpret the scope of his consent narrowly, not broadly.

Given the trial court's written factual findings, we agree with the trial court that, when defendant acquiesced in Broomfield's request, he reasonably understood that Broomfield was asking him to turn around so that Broomfield could make a visual inspection. He did not consent to any search beyond that. He did not agree that Broomfield could examine the inside of his pockets, remove his clothes, or, as in this case, lift his clothes so that he could see what was not apparent from a visual inspection.

 The dissent reaches a different conclusion. It reasons:

"Here, the stated objective of the search was to check defendant's back pockets to ascertain whether he had a wallet. That objective could not be accomplished if the pockets were obscured by defendant's shirt. Defendant's untucked flannel shirt hung over his back pockets so that the officer could not see them. A reasonable person, having been asked for consent 'to check his back pockets to see if, in fact, he did have a wallet in [them]' and knowing that the pockets were obscured by his shirt, would have anticipated that, if he consented, his shirt would have to be lifted so the pockets could be viewed."

---

[2] The fact that it turned out that a visual inspection was insufficient to achieve Broomfield's goal does not retroactively expand the scope of defendant's consent.

[3] "Acquiesce" means "to accept or comply tacitly or passively." *Webster's Third New Int'l Dictionary* 18 (unabridged ed 1993).

185 Or App at 77 (Edmonds, P. J., dissenting). With respect, the facts on which the dissent's analysis depends appear to be at odds with the facts that the trial court found. The trial court did not find that Broomfield asked defendant for consent "to check his back pockets to see if, in fact, he did have a wallet in [them]." Rather, in its written findings, the trial court found that "[t]he officer then asks the defendant to turn around so he can see if the defendant has a wallet."[4] Similarly, the trial court did not find that defendant consented to Broomfield's request "knowing that the pockets were obscured by his shirt." Rather, there was no testimony as to what defendant knew when he acquiesced in Broomfield's request, and the trial court's findings are silent on that point. The trial court could have inferred that defendant knew that his shirt would obscure Broomfield's view when he turned around, but it also could have inferred that defendant was not aware of that fact until Broomfield reached out and lifted up his shirt. Because the trial court ruled in defendant's favor, we are required to assume that it drew the latter not the former inference. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).[5] Given the trial court's explicit and implicit factual findings, we reach a different conclusion from the dissent.

Affirmed.

---

[4] The dissent bases its analysis on Broomfield's testimony rather than the trial court's written findings. It reasons that it is appropriate to do so because the trial court stated, in its oral ruling, that it credited Broomfield's testimony. 185 Or App at 78 (Edmonds, P. J., dissenting). We disagree with the dissent's reasoning for three reasons. First, Broomfield did not purport to give a verbatim account of what he said to defendant. Rather, Broomfield testified to two different versions of what he asked defendant, and the trial court could credit Broomfield but still reasonably infer from his testimony that he in fact asked defendant "to turn around so that he can see if the defendant has a wallet." Second, even if the trial court's written finding is at odds with its oral statement, the written finding controls. *Roe v. Doe*, 161 Or App 477, 483, 984 P2d 344 (1999), *rev den*, 329 Or 651 (2000). Finally, the court's oral finding that Broomfield's testimony was credible and "fully explanative of the situation here" was made in the context of deciding whether Broomfield had stopped defendant. On balance, we conclude that the court's written finding controls.

[5] "Article I, section 9, requires that the scope of a defendant's consent be evaluated on the specific facts surrounding the grant of consent." *Helow*, 171 Or App at 240. Whether defendant knew, when he turned around, that his shirt would obscure Broomfield's view is a specific historical fact that bears on what a reasonable person in defendant's situation would have understood the scope of his consent to be.

**EDMONDS, P. J.,** dissenting.

In this case, it is undisputed that defendant consented to turn around so that the officer could see if defendant had a wallet. The majority concludes that, after defendant turned around, the officer exceeded the scope of defendant's consent by lifting his shirt. I disagree.

The scope of consent is determined based on the objective standard of what a reasonable person would have understood the scope of the consent to be, given the stated objective of the search. As we said in *State v. Arroyo-Sotelo*, 131 Or App 290, 296, 884 P2d 901 (1994),

> "[to determine the scope of consent], we must consider what a reasonable person would have understood by the interchange between the officer and defendant, the person giving the consent. As discussed above, this requires an evaluation of the factual circumstances. One of the best indicators of the intended scope of a search authorized by consent is the content of the request for consent."

At trial, the officer testified:

"Q. Did you ask any thing of [defendant] at that point?

"A. Yeah. In the past I have had people tell me they didn't have any I.D., they didn't have a wallet, lo and behold, in their back pocket there is one. So I just asked him. I asked if he would mind turning around so I could look to *check his back pockets to see if in fact* [*he*] *did have a wallet in it.*

"Q. Now, * * * do you see [defendant] in court here today?

"A. Yes, he is seated here at the end of the table.

"Q. Do you recall how [defendant] was dressed at that time?

"A. I believe he was wearing a pair of jeans, like blue jeans, *and he had on a long flannel type shirt and it actually was, I guess I would say, it was untucked, so it was hanging over his pants, over his pockets.*

"Q. Okay. And you asked—you asked him to turn around, is that correct?

"A. Yes, I did.

"Q.  Did you demand that or can you indicate to the court the tone of voice that you used at time?

"A.  We were just strictly having casual conversation at that point. I mean I had no reason to detain him or to you know, order him to do anything. I didn't know if that was [Ivan] and I didn't have any real additional reason to believe that it was at the time. So we were just having casual conversation. And I just said, hey, you know, *would you mind turning around so I can just check your pockets?*

"Q.  What—How did he respond to that?

"A.  He said—*I—don't know his exact words. But you can read from my report, he agreed to do so, and then he actually turned.* I didn't force him or I didn't step behind him. He then turned around, so now his rear pockets were facing me.

"Q.  At any time up until this point had you touched or laid hands on [defendant]?

"A.  No.

"Q.  So at this point he is turned around and his back is towards you, is that correct?

"A.  Correct.

"Q.  What happened next?"

(Emphasis added.)

The officer testified further,

"A.  Well, *I couldn't really see his pockets because of the shirt hanging down.* So I just kind of reached down and pulled the shirt up a little bit. I could see his pockets. And in his—one of the back pockets I could see kind of a bulge. And I leaned forward. There was a couple of lottery tickets sticking out of the pocket. And I leaned forward. And when I leaned forward to look into the pocket, I could see a handgun in there.

"Q.  Did you have to open the pocket or touch him in order to see into the pocket?

"A.  *I lifted up the—the bottom portion of his shirt because it was covering the pockets.*

"Q.  Right. Other than that?

"A.   No. I didn't stick my hand into the pocket or anything. I just leaned forward and it was sticking out far enough that I could see into the pocket.

"Q.   Okay. And what did you see in that pocket?

"A.   I saw the lottery ticket and also the butt of a small handgun."

(Emphasis added.)

Here, the stated objective of the search was to check defendant's back pockets to ascertain whether he had a wallet. That objective could not be accomplished if the pockets were obscured by defendant's shirt. Defendant's untucked flannel shirt hung over his back pockets so that the officer could not see them. A reasonable person, having been asked for consent "to check his back pockets to see if, in fact, he did have a wallet in [them]" and knowing that the pockets were obscured by his shirt, would have anticipated that, if he consented, his shirt would have to be lifted so the pockets could be viewed.

After the officer lifted defendant's shirt, he leaned forward to look into the pocket after seeing a bulge and a couple of lottery tickets sticking out of it. He did not touch or open the pocket or stick his hand into it. Rather, the butt of handgun was in plain view from the officer's vantage point after he lifted defendant's shirt. Because defendant implicitly consented to the lifting of his shirt, he waived any privacy interest in contents of his pocket that were in plain view. Consequently, the trial court erred in suppressing the evidence of the handgun that was seized as the result of what the officer saw.

The majority disagrees. It reasons,

"[T]here was no testimony as to what defendant knew when he acquiesced in [the officer's] request, and the trial court's findings are silent on that point. The trial court could have inferred that defendant knew that his shirt would obscure [the officer's view] when he turned around, but it also could have inferred that defendant was not aware of that fact until [the officer] reached out and lifted up his shirt. Because the trial court ruled in defendant's favor, we are

required to assume that it drew the latter not the former inference."

185 Or App at 74. The majority's analysis misinterprets the trial court's findings, and it applies an incorrect standard of review. The officer's testimony, as quoted above, is uncontroverted. He was the only witness to testify at the suppression hearing about what occurred when defendant consented to the search. The trial court expressly found the officer's testimony credible. The court said orally at the hearing, "I adopt the officer's testimony as candid and believable and fully explanative of the situation here."

When a trial court makes findings of fact pursuant to a ruling on a motion to suppress, and there is evidence to support them, we are bound by those findings. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Here, the trial court expressly found that what the officer testified to is what occurred. "[O]nce the facts have been decided [regarding whether the breadth of the consent has been exceeded], their legal effect is question of law." *Arroyo-Sotelo*, 131 Or App at 294. We are not bound by the trial court's legal conclusion regarding the officer's testimony. Rather, we make our own determination about whether the facts as found by the trial court suffice to meet constitutional standards. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991).

Consent to a request to search can be verbal or nonverbal. In this case, it was both. Defendant consented orally and turned his body toward the officer so that the officer could see if he had a wallet after being asked by officer if he could check defendant's pockets. The only true issue in this case is whether the officer's actions pursuant to defendant's consent exceeded the scope of the consent as it would have been intended and understood by a reasonable person. That issue presents a question of law that does not depend on whether the trial court found that defendant was aware that his shirt obscured his wallet in his pants pocket. Rather, it depends on what a reasonable person would have understood as the scope of consent. Common sense tells us that a reasonable person wearing a untucked, long, flannel type of shirt hanging over his pants and his pockets would have understood that a consent to "check his pockets" included consent

to lift his shirt high enough to view the pockets. Article I, section 9, of the Oregon Constitution prohibits only "unreasonable search[es]," not all searches. The uncontroverted facts in this case as found by the trial court demonstrate that the scope of the officer's search was not unreasonable in light of defendant's verbal and nonverbal consent.

The majority reasons otherwise. First, it points to the findings made by the trial court in its written order after the hearing. The court stated, in relevant part,

"5) The officer told defendant that he was looking for someone and asked defendant if he had any identification of his person. The defendant replied that he had none.

"6) The officer then asks the defendant to turn around so he can see if the defendant has a wallet. The defendant acquiesced to this request."

In light of the trial court's earlier finding that the officer's testimony was completely credible and explanatory, the only plausible understanding of the written findings is that they constitute an attempt to characterize the officer's testimony. Apparently, however, the majority views the written findings as conflicting with the officer's testimony, despite the trial court's express finding to the contrary. Based on that premise, the majority then turns to another principle from *Ball v. Gladden*. When a trial court has failed to make express findings on all pertinent facts and there is conflicting evidence in the record as to those facts, a reviewing court will presume that the trial court found facts consistent with its ultimate conclusion. *Ball v. Gladden*, 250 Or at 487. Based on its premise that the trial court did not accept the officer's testimony, the majority applies the above principle to arrive at its conclusion that the trial court implicitly found that defendant was not aware that his shirt obscured his pants pocket.

The majority makes two errors in its analysis. First, there is no conflicting evidence in the record, so the application of the above rule is inappropriate. Second, the standard to be applied is an objective one: whether a *reasonable person* would have believed that his consent encompassed the lifting of his shirt. Regardless of what defendant subjectively

believed, he is held to an objective standard of reasonableness.

For all of the above reasons, I dissent.