Argued and submitted June 30, affirmed November 5, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# KAREN ANN ATKIN,
*Appellant.*

## C992235CR; A114082

78 P3d 1259

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

_____

* Wollheim, J., *vice* Kistler, J., resigned.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant was convicted on stipulated facts of possession of a controlled substance. On appeal, she assigns error to the denial of her motion to suppress evidence. We affirm.

Hillsboro Police Officer Chrz saw a car with expired tags pull into a parking lot. In the process of investigating for a possible vehicle registration violation, Chrz discovered that the driver of the car had a suspended license and was wanted on a felony warrant in Multnomah County. Chrz decided to arrest the driver, inventory and impound his car, and confine him to the back seat of the patrol car. By that time, defendant, a passenger, had stepped out of the car and started a conversation with a bystander.

Because he wanted "to see what kind of person" defendant was and out of concern for his safety because "she could have been a wanted murderer, as far as I know," Chrz decided to investigate defendant. He approached her and asked to see her identification. Defendant gave him her Oregon identification card. While retaining that card, the officer used his shoulder radio to check whether defendant was wanted on any outstanding warrants. As he waited for a response, Chrz noticed a purse on the passenger seat of the car. Still retaining defendant's identification card, he asked if the purse belonged to her. She said it did. The officer then asked if defendant had any "drugs, knives, or guns in her purse." When she said that she did not, he asked if he "could look inside her purse[.]" Defendant said, "Go ahead." He looked in the purse, found a small gray box, removed it, opened it, and discovered some white powder, a scale and a spoon. Chrz asked defendant what the white powder was, and she responded, "I don't know. It might be meth." After field testing the powder, the officer determined that it was methamphetamine. He arrested defendant.

Defendant moved to suppress the evidence, arguing that she was seized and that her purse was searched in violation of Article I, section 9, of the Oregon Constitution, the Fourth Amendment to the United States Constitution, and

various state statutes. The trial court denied the motion, concluding that defendant's interaction with Chrz was "mere conversation" and that she consented to the search of her purse. On appeal, defendant assigns error to the trial court's denial of her motion to suppress. Acknowledging that she gave Chrz consent to "look in" her purse, she argues that the methamphetamine should nonetheless have been suppressed for three reasons: first, the search resulted from exploitation of an unlawful seizure of her person; second, her consent was not voluntary; and third, its scope was limited to looking into the purse and did not extend to looking into closed containers within the purse. We conclude that, under the undisputed facts, none of defendant's arguments can succeed. We therefore affirm.

■ Warrantless searches are presumed unreasonable. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). The state can overcome that presumption by proving that the warrantless search fell within a valid exception to the warrant requirement. *Id.* Consent is such an exception. *State v. Ready*, 148 Or App 149, 152-53, 939 P2d 117, *rev den*, 326 Or 68 (1997). In the present case, defendant does not dispute that she told Chrz he could "look in" her purse, and the state does not rely on any exception to the warrant requirement other than that consent. Our inquiry, therefore, focuses exclusively on the validity and scope of the consent.

■ Evidence obtained after consent that results from exploitation of an unlawful seizure must be suppressed. *State v. Rodriguez*, 317 Or 27, 40, 854 P2d 399 (1993). Defendant contends that this is such a case: Chrz unlawfully seized her and then exploited that act to extract consent. Unlike the trial court, we agree with defendant that the interaction between Chrz and defendant amounted to a constitutionally significant seizure of her person—in particular, a "stop." We also conclude that, because Chrz had no reasonable suspicion that defendant was guilty of any illegal conduct, the stop was unlawful. *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). However, we conclude that the officer did not exploit the illegality in order to obtain the consent.

■ An encounter between a law enforcement officer and a person is a seizure, and for that reason subject to the limitations of Article I, section 9, of the Oregon Constitution,

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances. * * * [T]he encounter is a 'seizure' of a person only if the officer engages in conduct significantly beyond that accepted in ordinary social intercourse. The pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens."

*State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991). Under that standard, we readily conclude that the encounter between Officer Chrz and defendant was a seizure. Chrz asked defendant for her identification and retained it while he checked to determine if she was wanted on outstanding warrants. He had not returned her identification when he asked if she had any drugs, knives, or guns, nor when he asked for consent to search her purse. No reasonable person would feel free to leave under such circumstances, nor would reasonable persons regard such conduct from an ordinary citizen as inoffensive. *State v. Starr*, 91 Or App 267, 270, 754 P2d 618 (1988) ("Although a request for identification may not transform an encounter into a stop," an officer's retention of a license "constituted a show of authority sufficient to lead a reasonable person to believe that he was not free to leave."); *State v. Smith*, 73 Or App 287, 292, 698 P2d 973 (1985) ("[T]he use of defendant's identification to check for arrest warrants constituted a show of authority that would lead a reasonable citizen in defendant's circumstances to believe that he was not free to leave unless the warrant check came back clear.").

The state argues that because the request for consent to search came less than a minute after Chrz took possession of defendant's identification, the retention was *de minimis*. We are not persuaded. As we have recently stated, " '[a] holding of the person, *no matter how minor*, is a seizure within the meaning of the Fourth Amendment even though no arrest has occurred.' " *State v. Hall*, 183 Or App 48, 52, 50 P3d 1258 (2002), *rev allowed*, 335 Or 195 (2003), quoting

*State v. Evans*, 16 Or App 189, 193-94, 517 P2d 1225 (1974) (emphasis added). The duration of the encounter is perhaps one factor to consider in determining whether it is a seizure. Here, the facts that Chrz took defendant's identification and, while holding it, radioed headquarters to determine whether she was a criminal, asked her if the purse she identified as hers contained weapons or drugs, and asked for consent to search the purse, make this encounter a seizure regardless of its duration. And as noted above, the state does not argue, and we find no reason independently to decide, that the stop was lawful. Chrz's desire "to see what kind of person" defendant was and his concern that "she could have been a wanted murderer, as far as I know," do not amount to *reasonable* suspicion of illegal activity.

■ Illegal seizure of a person, however, does not automatically render evidence obtained as the result of a subsequent consent inadmissible; inadmissibility results only "in those cases where the police have exploited their prior unlawful conduct to obtain that consent." *Rodriguez*, 317 Or at 40. Exploitation occurs when police use information or knowledge gained as a result of their illegal activity in order to obtain consent. *Hall*, 183 Or App at 57. In other words, to establish exploitation, defendant has the burden of establishing a factual nexus between the evidence she seeks to have suppressed and the prior illegal police conduct. *State v. Doyle*, 186 Or App 504, 512, 63 P3d 1253, *rev den*, 335 Or 655 (2003). "Mere physical presence as a result of prior unlawful conduct does not constitute exploitation of that conduct." *Rodriguez*, 317 Or at 40.

■ Here, defendant cannot establish the necessary connection between the illegal detention and the request for consent to search the purse. In fact, defendant cannot even establish a "but-for" relationship between the illegal stop and the request. It is true that Chrz's observation of the purse, and therefore his request to search it, occurred *during* the illegal stop, but there is no evidence that it occurred *as a result of* it; defendant, in other words, does not argue, and the evidence does not suggest, that Chrz observed the purse *because* he detained defendant. *Cf. Hall*, 183 Or App at 59. Nor did any information that Chrz obtained as a result of his

conversation with defendant, his observation of her, or the reply he received from his inquiry about her records, lead him to request consent to search the purse. No exploitation occurred.

■ In a related vein, defendant argues that her consent was invalid because it was not, under all of the circumstances, voluntary. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994). The facts do not support that assertion. Nothing suggests that Chrz threatened to retain her purse unless she gave consent to search it. Rather, according to uncontradicted testimony, defendant remained friendly and cooperative throughout the encounter. She was not being physically restrained or threatened, and the officer did not use his retention of her identification as leverage. In short, even though Chrz's conduct amounted to a show of authority sufficient to render the encounter a seizure, his conduct was not so coercive as to overbear her will. *See State v. Venturi*, 166 Or App 46, 51-52, 998 P2d 748, *rev den*, 330 Or 375 (2000) (the retention of a driver's license when asking for consent to search did not make the consent involuntary in the absence of evidence that the officer used the license as leverage); *State v. Glandon*, 166 Or App 451, 456, 998 P2d 785 (2000) (same).

■ Finally, defendant argues that, even if she consented to the search of the purse, she did not consent to the search of the gray box within it. That act, she contends, exceeded the scope of her consent. The scope of a person's consent does not depend on what the person subjectively intended but on what a reasonable person, hearing the consent, would have understood it to have included. *State v. Arroyo-Sotelo*, 131 Or App 290, 297, 884 P2d 901 (1994); *State v. Buchanan*, 185 Or App 68, 71-72, 57 P3d 930 (2002) ("[T]he scope of a person's consent does not turn on what that person subjectively intended. Rather it turns on what a reasonable person would have intended."). In determining the scope of the consent,

> "[t]he test is what 'a typical reasonable person would have understood by the exchange between the officer and the suspect[,]' and the intent of the parties is determined objectively in light of the totality of the circumstances surrounding the grant of consent in a particular case. *State v. Arroyo-Sotelo*, 131 Or App 290, 295, 884 P2d 901 (1994), quoting

*Florida v. Jimeno* 500 US 248, 251, 111 S Ct 1801, 114 L Ed 2d 297 (1991)."

*State v. Helow*, 171 Or App 236, 240-41, 15 P3d 103 (2000), *rev den*, 332 Or 56 (2001). Generally, when a police officer specifies the subject of a search, "the scope of [the] consent * * * should be interpreted to include those areas where the items that are the subject of the search might be found." *Arroyo-Sotelo*, 131 Or App at 297.

Here, Chrz, noticing a purse in the passenger seat of the car he intended to impound, asked defendant if it contained "any drugs, knives, or guns." Defendant responded, "No." Chrz then asked defendant "if I could look inside her purse, and she told me, [']Go ahead.[']" In the context of a request to search for drugs, a reasonable person would have interpreted the request to "look in" the purse as extending to closed containers within it that might have contained drugs. Nothing in defendant's response indicated that she intended to limit the search in the way that she now suggests. The search did not exceed the scope of the consent.

In sum, defendant consented to the search of her purse, including the box within it containing methamphetamine. Although the detention that preceded that consent was unlawful, the consent was not a result of exploitation of the illegality, nor was the consent involuntary.

Affirmed.